Good morning, Chief Judge Kaczynski, Judge Fischer, Judge Watford. You have to come up to the lectern. My name is Bradley Tam. Do you have enough room there on the lectern? Yes, Your Honor. Okay. My name is Bradley Tam. I am the appellate, Chapter 7 trustee, appearing pro se. Pro se. And with me at council table is the estate's appellate counsel, Lisa Schultz. Any relation to Judge Tam from the V.C. Circuit? No, Your Honor. Just asking. If it pleases the court, I would like to reserve three minutes for rebuttal. You have the clock in front of you. Thank you, Your Honor. The Bankruptcy Code requires trustees to reduce their estates to money, which trustees do by selling property. Trustees are then compensated for their services not on money brought in, but on money disbursed. Is property subject to a security interest part of the estate? Yes, Your Honor. It is subject. I mean, the trustee can't do anything with it. Section 541. If there's a security interest, it's like a brick. There's nothing that can be done with it, right? There's a lot of things that can be done with a security interest in Section 363. It can be crammed down, right? Pardon me? It can be crammed down. Yes, it can be crammed down. It can be sold over an objection. There's a lot of different provisions in Section 363F of the Bankruptcy Code, the different things that can be done to property. When selling collateralized property, that is property subject to a lien, the law requires that any value received from that sale be immediately used to satisfy the claim of the lien creditor. In a sale of collateralized property to a third party, there are two separate transactions in two separate steps. First, the buyer pays money into the estate. Then the trustee disperses money out to pay that secured creditor's lien. When selling, the trustee is also required by law to accept credit bids from any lien creditor secured by that collateral. Credit bidding under Section 363K, like any other credit bid, is simply that creditor's payment of the purchase price simultaneous with the trustee paying off that secured creditor's allowed claim. And I'd ask you a practical question. Let's suppose we were to say, well, the plain language, as two other circuits have done, the plain, at least one of the circuits, the other one came to the same conclusion, but said, no, you have to actually disperse monies. Is there any impediment, having been burned in this transaction, if you faced it again, is there any impediment from opting simply then to not go the credit bid, but require that the creditors actually pay money into the estate, and then you turn around and transfer a title? Well, the same effect as a credit bid, but there would actually be money technically changing. Judge Fischer, you've hit the nail right on the head squarely. This question has come up repeatedly since 1903, when Congress put monies dispersed into the trustee compensation statute. And truthfully, as Judge Ferris noted when he ruled on this, that there is this little futile exercise that the trustee could require, that the secured creditor actually hand him a check for the purchase price, and then the trustee immediately takes the check, endorses it back over, and hands it back. This is almost a livery of season from 11th century England. That little ritual could be asked for, and if the secured creditor was willing to cooperate with it, that could happen. And it wouldn't have no effect on the transaction, but it would under those circumstances, because I think the argument was made in another case that by structuring it that way, you could be challenged as having depleted the assets of the estate by structuring it that way simply to get a greater fee. Absolutely. This is why Congress, in its wisdom, created two statutes, Section 326, which sets the maximum cap on trustee compensation, and Section 330, which is a determination of reasonableness. If the trustee is trying to game the system in order to get overcompensated while at the same time hurting the estate, that's unreasonable, and the bankruptcy court has granted power under Section 330 to reduce compensation. However, as happens in many of these credit bid cases, and it's been recognized for over 100 years of litigation over this credit bid issue, a lot of times the trustee structures the transaction. I take issue with the Third Circuit in In re Land. They talked about trustee sale by credit bid is the same thing as basically abandoning the property. That's not what happens. When you abandon property, it goes back to the person who had immediate possessory interest, possessory interest, not lien interest, but possessory interest, right before the bankruptcy case. That's what happens in an abandonment, and trustees routinely abandon property. Now, if a purpose could be served and a deal could be structured where the estate benefited, which was exactly what happened in this case. In this case, it had been in Chapter 11 for a number of years. There had been heavy litigation going on. There was 20, 30 people or parties to the litigation. It had dragged on for years. Millions had been incurred in attorney's fees by the warring parties, all started by a foreclosure action. The U.S. trustee said this case is hopeless as of Chapter 11. They moved to dismiss the case. The U.S. trustee was on record of saying that there was no possibility that this case could ever have a good result for unsecured creditors. Well, the lien creditor asked that a trustee be appointed. The lien creditors got the case converted to a Chapter 7. Once it was converted to Chapter 7, the U.S. trustee looked to have one of his panel trustees appointed. They couldn't find one. Every one of them declined it. So the case was reconverted back to a Chapter 11 so that the creditors could elect a trustee. I was elected, and then the case was reconverted back to a Chapter 7 case. I was presented with a situation where I could abandon this property, and that thought was very much focused on and studied carefully. By abandonment, the property would have just gone back to the debtor, who had the immediate potential interest just prior to the case, and the debtor could have continued its three-year-long litigation war with the secured creditors. Alternatively, the property could have been sold to the secured creditors, which is what we elected to do. The secured creditor had to agree to provide substantial financing to the estate, financing that wouldn't have been available otherwise. Had I abandoned the property... What kind of financing? Money actually paid in. I believe the secured creditor paid $90,000. You mean cash? Cash, yes. It sounds to me like you're going out and getting another loan. No, I'm... No, no, I just want to make sure... There was a certain amount of cash collateral. So they threw in some cash collateral? Yes, they did. Cash? Yes. Okay. And had we abandoned the property, this deal wouldn't have happened. Had we abandoned the property, they wouldn't have paid the money in. Unsecured creditors would have gotten nothing. As a result of the deal we did, we were able to pay 35% of the unsecured creditor's claims. I think that's an amazing result. That's huge. Judge Ferris commented in his decision that it was undisputed that I did a wonderful job in orchestrating this hydra of a case which was occupying... No, a compliment like that from Judge Ferris was far more than money. Thank you, Your Honor. He's a canny guy, you know. That's like money in the bank. Thank you, Your Honor. Except it can't be dispersed. I did think it was interesting the way he noted it. Let me ask you a question about this alternative of saying... This is in response to Judge Fischer's questions about doing this livery of season kind of transaction. The trustee has a fiduciary duty to the state, and selecting that kind of mechanism where the only effect of it and the only purpose of it would be to have the trustee get more of a fee. Wouldn't the trustee be precluded by his fiduciary duties from structuring the transaction that way? Essentially, the money comes out of the unsecured creditor's pocket, right? If the trustee structured the deal simply for the purpose of increasing his fee, that would be a clear breach of the trustee's fiduciary duties. That's why we have Section 330. That would be unreasonable. Not since the time of Judas. Money was coins. Since that time, our society has developed an ever more expansive definition of what money is. By 1903, when Congress came up with monies dispersed, credit bids were alive and well. The BAP, in deciding this case earlier, said that credit bids are a unique construction of bankruptcy law. That's not true. We've got an entire universe of credit bids. Every time you go before a state court in a foreclosure action, and you complain that the mortgagee did not pay any cash for the transaction, the courts say credit bid is the same as cash. The Fifth Circuit in Spillman just very recently said... Counsel, can I just ask one factual question because you're now over your time? When you were appointed, as I understand it, this estate is just basically one asset, the condo building? No, Your Honor, there were multiple assets. Okay, what were the other assets? There was a malpractice claim against one of the debtors' pre-bankruptcy attorneys. There was a separate lot which had been sold before I was appointed, and the proceeds of that were sitting in a cash collateral account. I believe there was something like $500,000 in cash that came into the Chapter 7 estate at the time. Okay, but the main asset of the estate that you were trying to deal with is the condo building itself? Absolutely. And so what was the total amount of the liens against that building and what was the estimated fair market value at the time? I don't recall the total amount of liens against the property at the time, but I believe it was somewhere in excess of $1.7 million. And the estimated fair market value? $1.5 million. Okay, so everybody looking at that property knew there was no equity in it at the time? That was pretty clear. We did do our best efforts. It is a condo structure, a condominium, so we tried to sell the properties individually, but there was extreme circumstances that were set on this property at the time. We had one of the husbands was pouring bleach onto the cars in the parking lot. We had another guy on the third floor running around with a knife trying to stab people. I was pretty paranoid about the liability on this property and wanted to get rid of it quickly. We didn't really face the luxury of having time to liquidate it. The sale had to be done. We tried to structure a deal for which unsecured creditors would profit, fully conscious of our fiduciary duties as trustee to move this property and to benefit the estate, and that's what we did. A credit bid is the same as cash. Briefly, you mentioned that Fifth Circuit is another circuit that decided against credit bids. That's not true. The NRA England case is not a credit bid case. That's where the trustee used property to pay off unsecured creditors. So that one is completely out. Thank you, Your Honor. Okay, thank you. We'll hear from the U.S. trustee. May it please the Court, Noah Schottenstein for the U.S. trustee. When Congress restructured the trustee compensation provisions in the Bankruptcy Code, it replaced chapter-specific rules with a uniform scheme to align the interests of trustees with unsecured creditors. I'm sorry, I know you seem to have a prepared introduction, but let me just jump in on the question. Go right ahead, Your Honor. It's bothering me from the standpoint of your case. So let's say that Mr. Tam had been able to actually find a third-party buyer who had paid, you know, a dollar over the amount of the secured liens. You would say in that situation what? That Mr. Tam would get money as disbursed. The statute explicitly provides that. For the entire amount of the? That's absolutely correct, Your Honor. For bidding $1 over, even though he did all of the exact same work that he did in this case. That's absolutely correct, Your Honor. Why would we possibly? I cannot for a second think of why we would adopt that construction of the statute. Well, because Congress drew a hard line to encourage trustees to bring in cash. Under the Act, as the legislative history makes extremely clear, Congress was frustrated with trustees who were able to sit around and get paid by handing off secured property. What was the change? What's the difference between the language of the 1898 Act that got replaced? It says trustees' compensation will be X amount and such further sum as the court may allow as follows. And then under hitting one normal administration on this scale, it calculates them upon all monies disbursed or turned over by them to any person, including the lien holders. And now we go to 326 and it says upon all monies disbursed or turned over in the case by the trustees to parties in interest and so on. So what's the big change? Well, under the Act, there are two different types of corporate reorganization. Chapter 10 cases, which were public corporation cases where there were not debtor in possession. There was a trustee appointed. Fee caps didn't apply in those cases. Then there was Chapter 11 cases, which is the original debtor in possession construct. And when Congress merged trustee compensation for Chapter 7, 10, and 11 into 326A under the code, it unified the three different systems. It increased the caps. It structured it to encourage trustees to bring in cash. Well, wait a minute, counsel. You're not answering my question. That's the structure you're talking about. We're talking about the words. Oh, yeah, absolutely. Monies disbursed is the same. It all depends upon monies disbursed or turned over. That is correct. So under the prior Act, it made any difference to your argument if we had been operating under the prior Act? It depends on the case, the chapter that the case is in at the time. Under a plan of reorganization, you could explicitly include the value of property turned over. That was a part of the statute at the time. That got removed when all the different provisions were merged in 78. And so monies disbursed still means monies disbursed. It's just it removed the other statutory provision, which broadened it in context. Can you respond to your opponent's argument that, look, whatever problems you want to resist here are basically addressed by Section 330? I just find that intuitively persuasive, that all we're arguing about here is what the maximum could be. But when it comes time to actually figuring out whether, in fact, the trustee in the individual case did something that's worthy of compensation, the bankruptcy judge has discretion under 330 to figure out what the right amount is. What's your response to that argument? 330A7? Your Honor, 330A7 treats trustee compensation as a commission which can be modified, but under a more restrictive standard than a typical 330 analysis. And that also doesn't ameliorate the problem that if trustees are able to incur administrative expenses without bringing in cash to actually pay them. Then they just won't get paid under 330, right? Well, they will get paid if there's other cash that would otherwise go to other creditors. I'm saying, though, in an individual case, if the bankruptcy judge says, look, all this stuff you did over here produces zero value for the estate. Basically, you just wasted a bunch of time and you drove up your expenses, whether it was for the purpose of driving up your fee or not. You didn't provide any value to the estate. So why couldn't the bankruptcy judge just say, in this particular case, even though under 326, in theory I could give you X amount, I'm only going to give you this tiny little bit because that's commensurate with the value that you brought in? Because Congress created two separate provisions. It created a maximum to ensure that there was a maximum because, as the legislative history makes explicit in the Senate report, is that the maximums have historically been treated as what you would get anyways. And so Congress created a maximum to ensure that trustees had the incentive to bring cash in and then a second check under 330 to ensure that there's no improper behavior or unreasonable conduct going on in driving those fees. And the U.S. trustee can object at the 330 stage, right? That is correct. So, and if I remember correctly, this act reviews all applications for fees and doesn't get involved in every case, obviously, but can. That is correct. It has a statutory right to get involved. 11 U.S.C. 307. I'm sorry? 11 U.S.C. 307. It's probably emblazoned on your wall, right? So this is not like some things that happen in bankruptcy without no natural enemies because nobody has enough of an incentive to get in. I mean, here we have a regulatory agency. I mean, that's what the U.S. trustee is, basically, a regulator, a supervisor of all trustees. And if the U.S. trustee believes that in any one case or in a series of cases the trustee is being overcompensated, they can come in and object in the bankruptcy judgment rules on it. And there are further sanctions, too. Now, this trustee was appointed by election of creditors, but if a Chapter 7 trustee, if somebody on the panel is regularly not performing well, he can be stopped from the panel, right? That is correct. So there are other checks. That is true, but this check is one that is specifically. . . What about Judge Fischer's question about what Mr. Tam called the livery of season? What is, this is sort of a. . . Your Honor, I think you answered it yourself. One dollar less than Judge Watson's question. Don't get the extra dollar. But can they then do what Judge Fischer asked Mr. Tam, which is to say you can't do a credit bid but give us a check? Is that permissible? Well, a few different points. Creditors, a trustee can't force a creditor not to credit it. A creditor has a statutory right. The trustee must accept it. Second point, as Your Honor mentioned earlier, is that trustees are bound by their fiduciary duties, and that's why in the Third and the Fifth Circuit, none of the harbingers of doom that Mr. Tam has raised about the disincentives that the statute may provide have come to pass. We maintain fully qualified panels of trustees. The Third Circuit and the Fifth Circuit, we have not seen any of these problems that are purely hypothetical in this case. And again, our third, again, practical concern is cash. That's what Congress wrote the statute to encourage trustees to bring in. We recognize it can produce hard results in certain cases, but here Mr. Tam is still going to get almost $70,000. He's going to be paid at $182 per hour. The Supreme Court has been perfectly comfortable with reducing or denying compensation completely. In the Lamey case where the trustee assisted but didn't get reemployed, they had all of their compensation denied. And so the policy concerns that drive this, I think, have been well thoroughly considered by Congress. This is deliberate. This is not in terms of the implied absurdity. Your argument is that policies have to fall by the wayside when the statutory language is clear. And would you just run by me one more time in spoken words why you think the statutory language is so clear? Because money, as we go in quite full detail in our brief, money is something you take to the bank and deposit or you use it to buy goods and services. If you have a teenage son who's asking you for gas money, if it can be used like cash in general commerce, a cash check, if you take it to the bank and deposit it. No comment, Your Honor. You're saying it has to have a tangible form. It doesn't necessarily have to be tangible, but it has to be usable in commerce. And perhaps we can have a trial on whether Bitcoin meets. It's a medium of exchange, right? It is a medium of exchange. Why is a credit bid a medium of exchange? Because a credit bid is a right in a specific, it's a very limited right in a specific property, and you can't use it in commerce generally. Can I ask you then, just going back to my hypothetical, just changing it slightly. So the third party comes in, bids a dollar over the amount of the secured liens, but the holders of the secured liens top that bid by another dollar, so $2 over. You say in that scenario Mr. Tam can get fees on the entire amount? Mr. Tam can receive fees on the amount of the cash that comes in. The $2. If that's the cash that comes in, again, that's the way Congress wrote the statute. Again, it may produce some tough cases, but again, the policy concerns, the practical concerns, we have not seen a disincentive for trustees, we have not seen these problems. And so we fully admit there may be tough cases with hard results, but this is not one of them, and this has not produced them. So your argument hinges on the use of the word money? Money, dispersed right together. The statute, I believe both terms together, bolster the conclusion that money is referring to money and not just things of value. I just want to make sure I'm absolutely clear. So it hinges on the fact that the statute uses the word money. Is there a definition of money? I'm not sure there has been. Anyway, I'm just asking. I just want to make sure I understand. Is there a definition of money in the bankruptcy act? No, money is not defined by the code.  That is correct, Your Honor. And so as a medium of exchange, financing is not my strong suit, but if I have a credit lien of a million dollars against this building, would I be able to convert that to cash? That is, couldn't I sell that? You could, just like any other property you could reduce to money. That's what 70481 is, is reducing property to money. But you said that credit lien only has a limited purpose. It can only be used against a building. I'm sorry, Your Honor. A credit bid, the statutory right to credit bid under 363K is limited to when a trustee seeks to sell property under 363F, then the statutory right to credit bid kicks in. And that is, again, is not something you can take to the bank and deposit. It is valuable property and people trade claims. But, again, the code consistently distinguishes property from money, things of value. Let me follow that. I think I see your point. But if I have a credit lien and I can use that as a credit bid, I can monetize the lien and somebody else can come along and succeed to my interest. So why isn't that in the nature of a medium of exchange? Well, you know, as the housing market crashed, people thought they had valuable property. They treated houses like money. But when everyone started calling in their loans, it turns out the property wasn't worth what everyone else thought it was. And that's the point of money versus property. Stocks lose value. Stocks lose value. That is correct. And bonds and stocks are not money under the code. I'm sorry, Your Honor. Money loses value. Well, as the legal tender cases make clear. I remember gas at 19 cents, 19.9 cents a gallon. Your Honor, the Supreme Court dealt with that in the legal tender cases where Congress can change the value of money, but that doesn't change what money is, what tender is, what you use to pay debts as a disbursement or payments on a claim. What if it were gold bullion? Are we in the 16th century? Perhaps. Why in 2013? I mean, something that isn't – I was trying to use gold. It isn't sort of a gold U.S. coin that would have numismatic value or something like that. Let's just say it's, you know, gold that has a fluctuating but readily ascertainable and easily convertible into cash at any one time. Let's see. I said bullion because I wanted to avoid questions about purity. Sure. Your Honor, the answer to your question. The answer to your question, can you take it to a movie theater and use it to get a ticket? No. It's not money. You can't take a lot of credit to a movie theater and get a ticket. But a lot of credit is clearly money. Because that's a direct order to pay. But taking it to a movie theater and getting a ticket, it can't be the end all and be all of the definition. I mean, we have to have something a little more that includes credit, includes PayPal payments, includes – I mean, there's a whole series of things that we consider to be clearly equivalent of money. That's correct. Because you're transferring the legal rights. You go to 7-Eleven and buy yourself a bottle of soda, right? Your Honor, I think the difference there is that you're transferring a legal interest in money as property. And so if I wire you $50, you're still getting $50. We're just changing the title to that through all the fun systems of the UCC. You would resist the bullion. You would resist the bullion even though the bullion, if you had it right there in your bag, you could take it down to a – there must be some place in Honolulu where we can take them to a coin exchange and they would weigh it and you could convert it to cash in probably not much more time than it would take to go to the bank and withdraw money, right? Yes, Your Honor. And I do resist that because, again, it's like any other form of property. We can liquidate property in many ways. That doesn't make property money. Again, the Code distinguishes money to property. The Code talks about securities investments and how you protect that. And we're going to go through it in extensive detail in the briefing. But, again, the Code, again, all the tools of statutory interpretation tell us that money and an accounting offset are not the same thing. Okay.  Thank you, Your Honor. I think you've run out of time. Do you want to take a minute for rebuttal? 30 seconds. 30 seconds. You got it. Your Honor, I have here what was a birthday gift from my partner. It's a 100-year-old version of Black's Law Dictionary. And I have taken the liberty of making photocopies of both the 1897 First Edition and the 1910 Second Edition. These are irrelevant because the law mandates that when interpreting a statute, you look at the definition of the words at the time the statute was enacted. With that, I've already provided copies to appropriate counsel. Money has both a specific and a generic term. And in the generic term, as shown by Black's Law Dictionary, it includes things of value used in commerce. And in commerce, we see credit bids being used all the time. And Judge Watford, to answer your question on the hypothetical, the first credit bid, U.S. trustee says I don't get paid. The next third party with $1 over, I get $70,000. Then when the creditor, secured creditor, comes back and says, I'm going to credit bid the full amount plus throw in $2 extra, then the U.S. trustee says I only get 25% of that dollar, $1. So what I'm in is in a slot machine. And I don't think that's what Congress intended when they invented this statute. Thank you. Kennedy. Thank you. The case is argued for stance amendment. We'll take a brief recess.
judges: Kozinski, Fisher, Watford